# Wiley's Estate.

*Decedent's estates—Claim for services—Evidence—Finding of fact by auditing judge.*

A finding of fact by an auditing judge confirmed by the orphans' court that a claim for boarding a decedent by a nephew was not sustained either by an express contract with the decedent, or by an admission by the decedent of the correctness of the claimant's account, will not be reversed by the appellate court where no obvious mistake appears. Such finding must be given the force and effect of a verdict of a jury.

Argued Dec. 10, 1902. Appeal, No. 159, Oct. T., 1902, by Allen Waters, from decree of O. C. Phila. Co., Oct. T., 1901, No. 116, dismissing exceptions to adjudication in estate of Thomas Wiley, deceased. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. POTTER, JJ. Affirmed.

Exceptions to adjudication.

At the audit Allen Waters, a nephew of the decedent, presented a claim for boarding the decedent, amounting to $1,132.77, as follows :

| | |
|---|---|
| April 1, 1894, to May 26, 1894, at $5 per week . . . . . . . | $ 40.00 |
| May 27, 1894, to Oct. 1, 1894, 127 days, at $2 a day . . . . . | 254.00 |
| Oct. 1, 1894, to May 29, 1895, at $5 per week . . . . . . | 170.00 |
| June 1, 1895, to Oct. 1, 1895, 122 days, at $2 a day . . . . . | 244.00 |
| June 1, 1896, to Oct. 1, 1896, 122 days at $2 a day . . . . . | 244.00 |
| June 1, 1897, to Oct. 1, 1897, 122 days, at $2 a day . . . . . | 244.00 |
| July 15, 1898, to Sept. 1, 1898, 48 days, at $2 a day . . . . . . | 96.00 |
| Feb. 10, 1899, to Feb. 19, 1899, 10 days at $2 . . . . . . | 20.00 |
| | $1,312.00 |

| | | |
|---|---|---|
| Credit by cash June 2, 1895 | $40.00 | |
| Credit by cash Sept. 25, 1896 | 59.67 | |
| Credit by cash Oct. 1, 1896 | 79.56 | |
| | 179.23 | $1,132.77 |

FERGUSON, J., found as follows :

There are a number of reasons why this claim should not be allowed. The claimant partly relies upon a book account against the defendant which he alleges he kept. While it is true that in the year 1894 there are in this book charges of $5.00 per week, against the decedent, all the other charges are lumping ones, made once a year, and covering about four months each

time, and extending from 1894 to 1899. These charges are not the proper subjects of a book of original entry. While the evidence shows that the decedent lived with the claimant, there is, outside of this book, no definite testimony as to the time when he so lived, or the number of weeks or days, although the rate of board which it is alleged he agreed to pay was proven.

All the charges prior to 1896 are barred by the statute of limitations. It is true that credit is given as above for payments on account, but this does not toll the running of the statute unless there is a clear and explicit acknowledgment of the debt and a promise to pay the same. Besides, in the absence of any appropriation of these payments, the law would apply them to the oldest indebtedness, which is certainly barred. Claims of long standing against decedent's estate are always viewed with suspicion of their integrity, particularly when the claimant has every opportunity to collect the debt in the lifetime of the decedent. In this case the claim is composed of eight separate items commencing in 1894 and ending in 1899. We are asked to believe that the decedent, having left the claimant's house without having paid his board in 1894, went back to it again in 1895, and, after a stay of months, again left without paying his board; and was taken back again in 1896, when the same thing was repeated and continued every successive year down to 1899, the claimant each year, as he alleges, always charging his board in his book and receiving no payments but the trifling ones above mentioned. All this is very improbable. Men do not do business in this way. Like servants' wages, board is presumed to be paid weekly or monthly or periodically. In this case, according to the claimant, it was not paid at all, and yet, each succeeding year, the decedent is taken back to board without any settlement for the previous year. In December, 1898, the claimant wrote to a brother of the decedent stating that it had taken all his money to pay rent, taxes and other debts, and asked him to see the decedent and ask him if he would help him out, and that after January he could pay $50.00 to $75.00 every month until he got it paid off. In November, 1898, claimant wrote directly to the decedent asking him for a loan of $150 which he promised to pay in six months with interest. At the time these letters were written, according to

the statement of the claimant, the decedent was nearly $500 in claimant's debt. On April 9, 1895, the claimant and his wife gave to the decedent a judgment note for $662.90 payable six months after date. This judgment was entered of record the next day and was revived by sci. fa. and was after the decedent's death paid by the claimant to his executors. Why should the claimant write letters begging for a loan from decedent if the decedent at that time owed him money? Would it not be more likely, if he was so hard pressed as he represented, that his letters would be demands upon the decedent for payment on account of his indebtedness? The judgment note was given when the decedent, according to claimant's statement, was largely in his debt. Why should he give a judgment note when the decedent owed him so much money? Why should the claimant, after the decedent's death pay this judgment note to his executors when at that time the decedent owed him nearly twice the amount thereof? All these questions indicate that the actions of the claimant were so entirely contrary to those usual with men dealing with each other in business matters that the auditing judge must reject this claim.

The court in banc in an opinion by PENROSE, J., dismissed exceptions to adjudication.

*Errors assigned* were in dismissing exceptions to adjudication.

*J. Howard Morrison*, for appellant, cited : Peters's Est., 20 Pa. Superior Ct. 223; Brenneman v. Rudy, 8 Pa. Dist. Rep. 68; Winings v. Hearst, 17 Pa. Superior Ct. 314; Palmer v. Gillespie, 95 Pa. 340 ; McCullough's Est., 18 W. N. C. 348.

*John M. Ridings*, with him *William Kelley*, for appellees, cited : Burr v. Burr, 26 Pa. 284; Miller v. Baschore, 83 Pa. 356 ; Montgomery v. Cunningham, 104 Pa. 349; Landis v. Roth, 109 Pa. 621; Rosencrance v. Johnson, 191 Pa. 520.

OPINION BY WILLIAM W. PORTER, J., January 20, 1902:

This is an appeal from a decree of the orphans' court rejecting a claim against a decedent's estate. The claim was made by a nephew for boarding the decedent. Payment was

never legally demanded in the lifetime of the alleged debtor. The board is alleged to have been furnished during five separate and distinct periods of time. Part of the claim was barred by the statute of limitations. The claimant urged that the testimony, by him and in his behalf, proved (1) an express contract by the decedent to pay, and (2) an admission of the correctness of his account, by the decedent. The claimant himself, although a party in interest, was permitted to testify. His testimony, with that of his wife, went far to proving a prima facie case. If the court below had found in the claimants' favor, difficulty would have been experienced in finding ground to overthrow the decision. It must be remembered however, that this court does not sit as a court of first instance. It is manifest from the adjudication, and the opinion sur exceptions, that the court below was guided by principles of law properly applicable to the case. It is also clear that the findings of fact by the auditing judge confirmed by the court in banc, must be given the force and effect of a verdict of a jury. The testimony submitted by the claimant was in some respects contradictory and inconsistent. Some of it was met by denial testimony. The dealings between the parties, as alleged by the claimant and attempted to be proven, were apparently at variance with reason and probability. The orphans' court evidently did not believe a considerable part of the testimony for the claimant. This is manifest from the adjudication and opinion.

The conclusion is thus summed up by Judge PENROSE in the opinion sur exceptions, in which he finds that the transactions testified to by the claimant were "so contrary to the ordinary course of dealing between man and man, that the auditing judge was fully justified in disregarding the testimony of the claimant and his wife (which had been made admissible by reason of a somewhat incautious cross-examination), as to alleged admissions and declarations of the decedent."

We are not disposed to overthrow the findings of fact by the court below and the decree is therefore affirmed.